William Teres v. Commissioner.
Teres v. Commissioner
Docket No. 36342.
United States Tax Court
1952 Tax Ct. Memo LEXIS 64; 11 T.C.M. (CCH) 1008; T.C.M. (RIA) 52300; October 21, 1952
*64 Held, that in the taxable year 1945, the partnership of William Teres Company, engaged in the conversion of textiles, was composed of petitioner, his wife, Sadie, and his son, Howard, and that their respective interests in the profits were as fixed in the partnership agreement. Held, further, petitioner is not taxable upon the distributable share of Howard in the profits of the partnership. George R. Sherriff, Esq., 42 Broadway, New York, N. Y., and Joseph C. Woodle, Esq., for the petitioner. Robert Margolis, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1945 of $16,972.72. The deficiency is due to the addition to the income reported on petitioner's return of "(a) Income from partnership - $23,724.82." This adjustment is explained in the deficiency notice as follows: "(a) It is held that your son, Howard F. Teres, is not a bona fide partner for Federal income tax purposes, in the William Teres Company and that the income reported by him as distributable from that business in the taxable year 1945 is taxable to you. "It is further held that your *65 share of the net income of that partnership is $77,981.33 as disclosed by schedules submitted to you under date of April 1, 1949, whereas you reported only $54,256.51. Your net income has accordingly been increased by $23,724.82 from this source." Petitioner by an appropriate assignment of error contests the correctness of respondent's determination. Findings of Fact Petitioner, an individual residing in New York City, filed his income tax return for the taxable year ended December 31, 1945, with the Collector of Internal Revenue for the Third District of New York. Petitioner, and later the partnership here involved, are engaged in the business of converting and manufacturing rayon textiles. Petitioner has been engaged in this business most of his life. As a converter they buy grey goods from the mills, woven in the raw, which they dye and finish and sell to manufacturing firms. As a manufacturer they buy yarn from the mills and have it woven by others on commission and then returned to them to be sold as yard goods. They had no mills and used no machinery in their business during the years 1941 through 1945, all the manufacturing being done under contract by various mills *66 in Pennsylvania, New Jersey, and New England. The goods were bought outright and insured by the partnership, although often stored at the mills. In 1945, there were approximately 15 employees in the business. The place of business is at 171 Madison Avenue, New York City, and petitioner, and later the partnership, have occupied these same premises since 1936. The premises consist of a loft building with storage facilities and they are occupied under a lease. Around 1919, petitioner entered into a partnership with a Mr. Weissman to engage in this business. This partnership was dissolved in 1936 as the result of disagreements and unpleasant experiences with Weissman. Following the dissolution petitioner for several years carried on the business as an individual proprietorship. It has often been necessary in this business to borrow money to operate. Petitioner had accounts with various banks, including the Manufacturers Trust Company, The National City Bank, and the Sterling National Bank. Prior to the formation of the partnership, promissory notes were signed by petitioner alone, during the partnership signature was by petitioner and his wife, Sadie, and since incorporation by petitioner, *67 Sadie, or Howard. Petitioner had good credit standing with a reputation for integrity and veracity. While conducting his business as a sole proprietor petitioner obtained additional capital from his wife, Sadie. In addition to furnishing capital, his wife was also active in the business with petitioner and frequently came to the office and performed many services. Petitioner and his wife have two children, a married daughter named Malvina Lipkins, and a son named Howard. Howard was born May 28, 1924, and in 1941 was 17 years old. As a small boy, Howard had shown an interest in his father's business and he often accompanied his father on trips to the various mills. He has made these trips with his father since he was about 13 years old. Howard accompanied his father on these trips because he was interested in learning about the business and because he intended to enter that field. In this way Howard became acquainted with the textile business and developed an interest in it. For many years prior to the formation of the partnership Howard spent as much time as possible working in his father's place of business. He wanted to become familiar with the business because he expected to become *68 a part of it. While he was in high school he worked in the business in the afternoons doing various jobs about the office, such as helping in the shipping department, checking charges, looking up sales, using the monitor switchboard, helping with designing, and generally familiarizing himself with the different phases of the business. Petitioner started Howard working in the business as a young boy in the hope that he would become interested and would some day join him in the business. From 1936 to 1941, while petitioner operated as a sole proprietorship, he found it difficult to get along by himself. His health was not very good and he was advised by business associates not to try to carry on the business alone. Because of his unfortunate prior experience in the partnership with Weissman, petitioner would not consider taking any partners other than members of his own family. For several years prior to the formation of the partnership in 1941, the petitioner had discussions with certain friends in the industry, with bankers, and with his attorney and accountant with reference to the advisability of forming a partnership with his wife and son. These persons advised him to form such *69 a partnership. In 1941, it was decided to organize the partnership. Petitioner's attorney was asked to prepare the necessary papers, which he did. The partnership agreement was signed on August 1, 1941, by William, Sadie, Howard, and Malvina Lipkins, acting as nominee for Howard, and provided as follows: "Agreement made this 1st day of August, 1941, between WILLIAM TERES of 910 Grand Concourse, Bronx, New York, hereinafter called "William", and SADIE TERES of 910 Grand Concourse, Bronx, New York, hereinafter called "Sadie", HOWARD TERES of 910 Grand Concourse, Bronx, New York, hereinafter called "Howard", and MALVINA LIPKINS of 2155 Grand Concourse, Bronx, New York, hereinafter called "Malvina". WITNESSETH "WHEREAS, William is presently engaged in the conduct of a business at 171 Madison Avenue, New York City, as a sole proprietor, and "WHEREAS, William has, by instruments of gift, dated July 31, 1941, assigned from the business to Sadie and to Howard, the sums of Thirty Thousand ($30,000) Dollars and Thirty-Five Thousand ($35,000) Dollars, respectively, and "WHEREAS, William desires that Sadie and Howard assist him in the conduct of the business and become affiliated with *70 him as partners, and "WHEREAS, Sadie is familiar with the workings of the business and can be of assistance to a partnership to be formed, and "WHEREAS, Howard, who is an infant eighteen years of age, is familiar with the workings of the business and is pursuing a course of study along the technical lines of textile engineering, production, etc., and can be of assistance to a partnership to be formed, and "WHEREAS, William, Sadie and Howard are cognizant of the legal difficulty which exists if Howard, an infant, is held out to be a partner in a partnership to be formed, "NOW, THEREFORE, in consideration of the above and the mutual premises, covenants and agreements contained, it is agreed as follows: "1. The parties hereto shall engage as partners (William, Sadie and Howard) in the conduct of business under the firm name and style of WILLIAM TERES COMPANY. "2. The term of the partnership shall be for a period of ten years. Although the term shall commence on August 1, 1941, the parties hereto agree that it shall be continued to all intents and purposes under the individual name of William and as a sole proprietorship, until the close of the year 1941. It is felt by all *71 the parties that this is the wisest course to pursue, especially in view of the peculiar market conditions and the peculiar situation regarding supplies presently prevailing. No salary shall be paid to Sadie or to Howard or to his nominee for the period from August 1, 1941 to the close of 1941, and no services shall be rendered by them to the partnership during this period. No certificate of doing business, either under Sections 440 or 440-b of the Penal Law, shall therefore be filed until the close of the year 1941. "3. Because of the legal difficulties which would prevail if third persons dealing with the partnership were made aware of the fact that Howard, an infant, is a partner, the parties hereto have agreed that he may nominate as his nominee, his sister, Malvina, who shall hold the interest in the partnership, which shall nominally stand in her name, in trust for and for the sole use and benefit of Howard. She shall receive any and all profits and other payments which are made in connection with the ownership of an interest in the partnership, in trust for and for the sole use and benefit of Howard. Malvina shall render these services without any compensation from the partnership. *72 "4. The contributions to be made by each of the partners to the partnership shall be as follows: "(a) Sadie is contributing the sum of Thirty Thousand ($30,000) Dollars, which she received by instrument of gift from William, which instrument was dated July 31, 1941. "(b) Howard is contributing the sum of Thirty-Five Thousand ($35,000) Dollars, which he received by instrument of gift from William, which instrument was dated July 31, 1941. "(c) William is contributing all of the assets presently in the business, with the exception of the above sums of $30,000 and $35,000, which he gave by instruments of gift dated July 31, 1941 to Sadie and to Howard, respectively. "5. The net profits shall be distributed in the following proportions: William shall receive fifty-five (55%) percent thereof; Sadie shall receive twenty (20%) percent thereof; and Howard shall receive twenty-five (25%) percent thereof. At the close of 1941, a distribution of profits shall be made upon those profits earned from the date of this agreement until the close of the year. The moneys of the partnership shall be deposited in such depositories as a majority of the partners may determine. "6. From and after *73 the close of the year 1941, all checks of the partnership shall be signed by either William or Sadie. "IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above written. William Teres Howard Teres Sadie Teres Malvina Lipkins "I, MALVINA LIPKINS, do hereby consent to act as a partner, as nominee of my brother, Howard T. Teres, and to hold his partnership interest in trust upon the terms and conditions set forth in the within agreement, and to receive all payments, etc. which may be made by virtue of being a partner in trust for Howard. Malvina Lipkins The partnership certificate and certificates of doing business under a trade name were filed in the New York County Clerk's office as required by law. Petitioner's attorney advised petitioner that since Howard was a minor his interest should be shown in the name of a nominee over 21 years of age. Acting upon the attorney's advice, the partnership agreement provided that petitioner's married daughter, Malvina Lipkins, who was over 21 at the time, should hold Harold's interest in the partnership as his nominee, and she signed the partnership agreement. It was intended that Howard, *74 and not Malvina, should become a partner and Malvina merely represented Howard's interest as nominee during his minority. She did not acquire any interest in the partnership in her own right. Malvina did not participate in the business and did not share in the profits. When Howard became 21 in 1945, Malvina was released as a nominee. There was no separate trust agreement but the entire agreement as to the nominee relationship was contained in the partnership agreement. Petitioner's attorney advised petitioner that all the partners should make contributions of capital to the partnership. Sadie and Howard did not have sufficient funds of their own and, therefore, petitioner made gifts to them in the amounts of $30,000 to Sadie and $35,000 to Howard. These gifts were made from petitioner's capital interest in the business and were transferred on the books. The amounts thus received by Sadie and Howard were contributed by them to the partnership and were credited to their respective capital accounts. These transfers were outright gifts. The gifts were made with the understanding that they would be invested in the partnership so that Sadie and Howard could become partners. Petitioner *75 did not have any understanding whereby he reserved any rights whatsoever in the amounts transferred. A gift tax return was filed and appropriate taxes paid covering these gifts. The respondent recognized the validity of the gifts and proposed a deficiency in gift tax by increasing the value of the gifts, but a stipulation of no deficiency in gift tax was later filed with the Tax Court. In organizing the partnership it was desired to insure continuity of the business and to obtain the credit advantages of a partnership which petitioner's bankers had advised him would exist, at least to some extent. Petitioner was determined not to take any partners except members of his own family. It was intended by all the parties that Howard would be a partner and he was held out to the public as such. Howard understood that he would share profits and losses and that he was risking his entire capital contribution which had been given him by his father. The National City Bank and the Manufacturers Trust Company were advised in writing of the formation of the partnership and the members thereof. They were advised that Howard was a partner but that since he was a minor his interest was held in the *76 name of his sister as nominee. The credit agencies, Dun & Bradstreet and National Credit Agency, were advised of the formation of the partnership in 1941 and that Howard was a member thereof with his interest held in the name of Malvina Lipkins. Leases were executed in the name of the partnership and were signed on behalf of William Teres Company by petitioner as a partner. On November 25, 1942, an application was made to the National War Labor Board for permission to increase salaries of certain employees. The application was made in the name of William, Sadie, and Howard Teres trading as William Teres Company and was signed by petitioner as a partner. Petitioner, his wife, Sadie, and his son, Howard, entered into an agreement in February 1942 which established salaries for each partner. According to this agreement, petitioner was to receive $200 a week, Sadie was to receive $100 a week and Howard was to receive $35 a week. Howard's salary ceased upon his entry into active duty with the army. He was then no longer able to render any active services to the partnership except when on furlough. When the partnership was formed in 1941, the business was closed out as a sole proprietorship *77 and the three capital accounts of the partners were set up on the books. Thereafter, the proportionate share of the profits of the partnership was credited to the account of each partner in accordance with the partnership agreement. Each partner had a drawing account which was charged with any withdrawals made by a partner during the year. Each partner had the right of withdrawal of any part of his or her share of the partnership profits. Each partner's share of the profits which was not actually withdrawn was credited to the respective capital account and left in the partnership. Each partner, including Howard, reported in his income tax returns his share of the partnership profits for each year from its formation in 1941 until its dissolution in 1947. The returns of the partnership and also of its members were prepared by the accountant in accordance with the partnership books. Howard had the right to withdraw any part of his share of the profits at any time and often made withdrawals for his personal use. He did not have to ask anyone's permission to make withdrawals. Being a minor, he had no authority to sign checks. He would simply ask the bookkeeper to make out a check which *78 would be signed by his father or mother. Neither ever raised any question about signing any of these checks. In 1945, Howard withdrew $1,175 from his share of partnership profits for the purchase of an automobile for his personal use. In December 1944, when he was home on furlough from the army he withdrew $500 from his partnership account for personal expenses. In December 1944, he withdrew $3,000 and made a gift to his sister, Malvina, who had just moved into a new home and was furnishing it. On April 17, 1944, Howard withdrew $1,000 which he deposited in his personal account which he kept for his own personal use and neither petitioner nor Sadie had any rights in this bank account. Howard paid the premiums on his National Service Life Insurance by withdrawals from his share of partnership profits. He made withdrawals to pay off loans on life insurance policies which petitioner had assigned absolutely to him and Malvina. Petitioner reserved no rights in these policies and Howard and Malvina were the absolute owners. The assignments were made before Howard paid off the loans. Howard paid his individual income taxes with checks drawn on his share of partnership profits. None of the *79 money withdrawn from his partnership account by Howard was ever paid, directly or indirectly, to, or spent for the benefit of, either petitioner or Sadie. Neither had any control over Howard's share or right to withdraw from it, and neither ever asserted such a right. After he graduated from high school in 1942, Howard entered Lowell Textile Institute to obtain a technical education and to equip himself with a better knowledge of the textile business. Lowell Textile Institute was considered as the best school for textiles and textile engineering. In March 1943, he went into the army and was discharged in November 1945. While in the army he was stationed at various bases in several states in the United States before he went overseas. After his discharge from the army Howard returned to the business where he took a very active part until about February 1946, when he returned to Lowell to complete his course. After completing his course at Lowell Howard returned to New York to devote his full time to the business. While he was away at Lowell and in the army Howard kept in contact with his father about the business by correspondence and telephone calls. He occasionally made tests at *80 school for the partnership. During vacation and while on leaves from the army Howard spent much of his time at the office. On such occasions he would devote his time to inspecting the merchandise, checking sales, discussing various problems, and generally keeping abreast of all developments in the business. All during the existence of the partnership Howard was a part of it and rendered whatever services he was capable of performing considering his time and opportunity. Many of the methods which Howard learned at Lowell proved to be valuable to the business after Howard returned. With the advantage of his technical training he assumed much more control and soon became active in the business. While petitioner generally managed the business of the partnership, Sadie and Howard were partners and he often consulted with them. In February 1947, the partnership was dissolved and the business was incorporated as William Teres Company, Inc. Each partner contributed a portion of his partnership capital to the corporation and withdrew the balance of his or her respective share in cash. When the partnership was dissolved there was a balance to Howard's credit of $136,310.80. He applied $60,000 *81 of this to purchase stock in the corporation and the balance of $76,310.80 was withdrawn by him in cash. Howard still owns his stock. There was no restriction of any kind on the sale of the stock received by William, Sadie and Howard. The balance of $76,310.80 of Howard's share in the partnership remaining after purchasing the corporation stock was turned over to him at his request by issuance of a number of checks. These checks were deposited by Howard in various bank accounts belonging solely to him. These funds were used by Howard for his own personal use. He bought and furnished a house and invested a portion of the balance. No part of Howard's capital interest in the partnership has ever been transferred directly or indirectly to petitioner or Sadie and they have never received any benefit therefrom. Neither petitioner nor Sadie has attempted to exercise any control over Howard's share of the partnership profits. Today Howard is vice president and secretary of the corporation and very active in the business. He became an officer when the corporation was formed in 1947. The company today does some of its own manufacturing and Howard is an important figure in the designing and *82 manufacturing ends of the business. Ultimate Facts In 1941, William Teres, Sadie Teres, and Howard Teres in good faith and acting with a business purpose intended to join together in the present conduct of the business of William Teres Company as a partnership and their respective interests in the partnership profits were as agreed upon in the partnership agreement. In the taxable year 1945, Howard Teres was still a partner in this business with the same interest as agreed upon in the partnership agreement of 1941. His share in the partnership profits in 1945 is taxable to him and not to petitioner. Opinion BLACK, Judge: We have only one issue to decide in this proceeding and that is whether Howard Teres was a bona fide partner in 1945 in the partnership of William Teres Company. The Commissioner has recognized the validity of the partnership in so far as William and Sadie are concerned but he has determined that Howard was not a partner. Of course, it requires no citation of authorities for the proposition that respondent's determination is presumed to be correct and that the burden of proof is upon petitioner to show to the contrary. There was a great deal of evidence at *83 the hearing and from a careful consideration of it we have concluded that petitioner has met his burden of proof and we have made the following ultimate finding of fact: "In 1941, William Teres, Sadie Teres, and Howard Teres in good faith and acting with a business purpose intended to join together in the present conduct of the business of William Teres Company as a partnership and their respective interests in the partnership profits were as agreed upon in the partnership agreement. In the taxable year 1945, Howard Teres was still a partner in this business with the same interest as agreed upon in the partnership agreement of 1941. His share in the partnership profits in 1945 is taxable to him and not to petitioner." This finding of fact really disposes of the only issue which is in the case and there would seem to be but little reason for further discussion. In , the Supreme Court laid down the intention test as follows: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering *84 all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *
"* * * If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient. The Tower case did not purport to authorize the Tax Court to substitute its judgment for that of the parties; it simply furnished some guides to the determination of their true intent. * * * "* * * The Tax Court's isolation of "original capital" as an essential of membership in a family partnership also indicates an erroneous reading of the Tower opinion. *85 We did not say that the donee of an intra-family gift could never become a partner through investment of the capital in the family partnership, any more than we said that all family trusts are invalid for tax purposes in Helvering v. Clifford, supra. The facts may indicate, on the contrary, that the amount thus contributed and the income therefrom should be considered the property of the donee for tax, as well as general law, purposes. * * * We think the evidence in the instant case meets the intention test laid down by the Supreme Court in the Culbertson case, supra, and we, therefore, decide the only issue we have in favor of petitioner. There was no issue as to the amount of the income of the partnership. The only issue is to whom is it taxable and we have decided that petitioner is taxable only on his part as fixed by the partnership agreement and is not taxable on the part which belonged to his son, Howard. Decision will be entered for the petitioner.